1

2

3

4

5

6                                UNITED STATES DISTRICT COURT

7                                   DISTRICT OF NEVADA

8                                        * * * * *

9    ALFRED C. GRANADOS,                    )
                                            )   3:14-cv-00081-LRH-VPC
10                        Plaintiff,        )
                                            )
11   v.                                     )   ORDER
                                            )
12   NORTHERN NEVADA HIGH SPEED, LLC,       )
     a Nevada limited liability company,    )
13                                          )
                          Defendant.        )
14   _____ )

15        Before the Court is Defendant Northern Nevada High Speed, LLC's ("NNHS") Motion

16   for Partial Summary Judgment.  Doc. #13.[1]  Plaintiff Alfred C. Granados ("Granados") filed a

17   Response (Doc. #16), to which NNHS replied (Doc. #18).  Also before the Court is NNHS's

18   Motion to Exclude All Evidence Regarding Plaintiff's Claims for Special Medical Damages

19   Arising from a Life Care Plan Pursuant to FRCP 37(c)(1).  Doc. #24.  Granados filed a Response

20   (Doc. #28), to which NNHS replied (Doc. #29).

21   **I.      Facts and Procedural Background**

22        This is a diversity tort action between Granados, a citizen of California, and NNHS, a

23   Nevada limited liability company that provides internet services to its customers.  Doc. #1 ¶1.

24   Granados owns a thirty-foot high billboard located approximately thirteen miles south of

25   Gardnerville, Nevada next to Highway 395 on land owned by the United States in trust for

26   Granados.  *Id.* ¶¶8-9.  On May 4, 2012, Chris Stout ("Stout"), a NNHS employee, and David H.

27   Akola ("Akola"), a NNHS employee, visited Granados' land to install an antenna and other

28   electronic equipment on Granados' billboard to enable internet service for Granados and others.

_____

[1] Refers to the Court's docket entry number.

1    *Id.* ¶¶3, 5, 10-12.  Stout and Akola brought an approximately forty-five foot ladder with them to

2    the installation site.  *Id.* ¶13.  Stout and Akola extended the ladder and leaned it up against the

3    billboard so that the base of the ladder rested on the ground and the top of the ladder extended

4    higher than the billboard.  *Id.* ¶¶14-15.  While Stout climbed the ladder to install the antenna,

5    Akola held the ladder in place on the ground.  *Id.* ¶¶19-20.  After installing the antenna, Stout

6    and Akola left the ladder leaning unsecured against the billboard and began to install other

7    electronic equipment using a smaller ladder.  *Id.* ¶¶21-23.  Meanwhile, the tall ladder fell and

8    struck Granados' back, causing severe injuries.  *Id.* ¶¶24-25.

9         When this incident occurred, two Occupational Safety and Health Administration

10   ("OSHA") regulations applied to the work performed by Stout and Akola.  *Id.* ¶26.  One

11   regulation states that "[l]adders shall be used only on stable and level surfaces unless secured to

12   prevent accidental displacement."  29 C.F.R. § 1926.1053(b)(6).  Another regulation states that

13   "[l]adders placed in any location where they can be displaced by workplace activities or traffic,

14   such as in passageways, doorways, or driveways, shall be secured to prevent accidental

15   displacement, or a barricade shall be used to keep the activities or traffic away from the ladder."

16   29 C.F.R. § 1926.1053(b)(8).

17        Granados alleges that "NNHS on its own behalf, and by its owners, agents, servants and

18   employees on its behalf, breached its duty of care by failing to ensure that the tall ladder did not

19   fall and injure Granados, and by negligently and carelessly allowing the tall ladder to fall and

20   injure Granados."  Doc. #1 at ¶28.  Granados seeks past and future general damages, medical and

21   incidental expenses, loss of earnings, and reasonable costs and attorney fees.  *Id.* at 5.

22   **II.    Legal Standard**

23        **A.    Summary Judgment**

24        Summary judgment is appropriate only when the pleadings, depositions, answers to

25   interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the

26   record show that "there is no genuine issue as to any material fact and the movant is entitled to

27   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing a motion for summary

28   judgment, the evidence, together with all inferences that can reasonably be drawn therefrom,

2

1   must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec.*

2   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty.*

3   *Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).  A motion for summary judgment can be complete

4   or partial, and must identify "each claim or defense—or the part of each claim or defense—on

5   which summary judgment is sought."  Fed. R. Civ. P. 56(a).

6        The moving party bears the initial burden of informing the court of the basis for its

7   motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex*

8   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of

9   proof, the moving party must make a showing that no "reasonable jury could return a verdict for

10   the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On an issue

11   as to which the nonmoving party has the burden of proof, however, the moving party can prevail

12   merely by demonstrating that there is an absence of evidence to support an essential element of

13   the non-moving party's case.  *Celotex*, 477 U.S. at 323.

14        To successfully rebut a motion for summary judgment, the nonmoving party must point to

15   facts supported by the record that demonstrate a genuine issue of material fact.  *Reese v.*

16   *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000).  A "material fact" is a fact "that

17   might affect the outcome of the suit under the governing law."  *Liberty Lobby*, 477 U.S. at 248.

18   Where reasonable minds could differ on the material facts at issue, summary judgment is not

19   appropriate.  *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material

20   fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for

21   the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of

22   evidence in support of the party's position is insufficient to establish a genuine dispute; there

23   must be evidence on which a jury could reasonably find for the party.  *See id.* at 252.

24        **B.       Failure to Disclose Expert**

25        The Federal Rules of Civil Procedure require a plaintiff to disclose "a computation of

26   each category of damages claimed by the disclosing party" and "make available for inspection

27   and copying . . . the documents or other evidentiary material, unless privileged from disclosure,

28   on which each computation is based, including materials bearing on the nature and extent of

1    injuries suffered."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  A party that has disclosed material under

2    Rule 26(a) must "supplement or correct" its disclosure "in a timely manner if the party learns that

3    in some material respect the disclosure or response is incomplete or incorrect, and if the

4    additional or corrective information has not otherwise been made known to the other parties

5    during the discovery process."  Fed. R. Civ. P. 26(e)(1)(A).  If a party fails to fulfill these

6    requirements, the party cannot use the withheld evidence or witness "to supply evidence on a

7    motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

8    Fed. R. Civ. P. 37(c)(1).

9         The party facing exclusion bears the burden of proving that failure to comply with Rule

10   26 was harmless or substantially justified.  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259

11   F.3d 1101, 1107 (9th Cir. 2001).  Courts are most likely to exclude evidence when a party first

12   discloses the material at issue "shortly before trial or substantially after discovery has closed."

13   *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 594 (D. Nev. 2011).  "[C]ourts

14   are likely to be lenient if the delay can be rectified by a limited extension of the discovery

15   timeline."  *Allstate Ins. Co. v. Nassiri*, No. 2:08-cv-0369, 2011 WL 2977127, at *6 (D. Nev. July

16   21, 2011).  District courts have wide discretion to determine whether to exclude evidence under

17   Rule 37(c)(1).  *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1245 (9th Cir. 2012).

18   **III.    Discussion**

19        **A.    Motion for Partial Summary Judgment**

20        NNHS argues first that the OSHA regulations regarding safe use of ladders should be

21   inadmissible as a matter of law because OSHA regulations cannot be used to establish negligence

22   per se.[2]  Doc. #13 at 4-5.  While this is a correct statement of law, Granados' Complaint does not

23   request relief on a negligence per se theory.  *See generally* Doc. #1.  Additionally, the Ninth

24   Circuit has held that while OSHA regulations cannot form the basis of negligence per se, they

25   can be considered—along with other evidence—as evidence of negligence.  *Robertson v.*

26

27

28        [2] Granados acknowledges that "[t]he primary facts relevant to Defendant's motion do not appear
     to be in dispute."  Doc. #16 at 3.  NNHS's motion is based not on a lack of genuine issues of material
     fact, but on the admissibility of the OSHA regulations.

4

1   *Burlington N. R.R. Co.*, 32 F.3d 408, 410 (9th Cir. 1994) ("OSHA standards may be admitted . . .

2   as some evidence of the applicable standard of care. Such evidence, however, is to be considered

3   in relation to all other evidence in the case.").[3]  This Court has similarly indicated that OSHA

4   regulations can be considered along with other evidence of negligence.  *See Martinez v. CNH*

5   *Am., LLC*, No. 3:08-cv-0477, 2010 WL 3257735, at *4 (D. Nev. Aug. 16, 2010) (citing

6   *Minichello v. U.S. Indus., Inc.*, 756 F.2d 26, 29 (6th Cir. 1985) ("We do not mean to suggest that

7   OSHA regulations can never be relevant in a product liability case."); *Albrecht v. Balt. & Ohio*

8   *R.R. Co.*, 808 F.2d 329, 332 (4th Cir. 1987) ("In a negligence action, regulations promulgated

9   under . . . [OSHA] provide evidence of the standard of care . . . but they neither create an implied

10   cause of action nor establish negligence per se.") (alterations in original)).

11          NNHS argues further that OSHA regulations are not applicable to the present case

12   because Granados is not an employee of NNHS, and OSHA regulations do not create a cause of

13   action for non-employees.  Doc. #13 at 4-5.  Neither the Nevada Supreme Court nor the Ninth

14   Circuit has stated clearly whether OSHA regulations can constitute evidence of the standard of

15   care for actions brought by non-employees.  The Nevada Supreme Court has stated that the

16   Nevada Legislature "did not intend to create any private civil remedy through" the Nevada

17   Occupational Safety and Health Act ("NOSHA").  *Frith v. Harrah S. Shore Corp.*, 552 P. 332,

18   340 (Nev. 1976).  The Ninth Circuit has stated that "OSHA violations do not themselves

19   constitute a private cause of action for breach."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th

20   Cir. 1994).

21          More recently, a number of courts have expressly held that OSHA violations can be

22   considered as evidence of standard of care for injuries sustained by non-employees.  The

23   Supreme Court of California held, for example, that "Cal-OSHA provisions are to be treated like

24

25          [3] The Third, Fourth, Fifth, and Sixth Circuits have also indicated that OSHA regulations can be
26   considered in a negligence case.  *See Ries v. AMTRAK*, 960 F.2d 1156, 1162 (3d Cir. 1992); *Albrecht*,
     808 F.2d at 332; *Velasquez v. S. Pac. Trans. Co.*, 734 F.2d 216, 218 (5th Cir. 1984); *Minichello*, 756 F.2d
27   at 29.  The First Circuit has held that OSHA standards can establish negligence per se.  *Pratico v.
     Portland Terminal Co.*, 783 F.2d 255, 263-67 (1st Cir. 1985).  The Ninth Circuit declined to follow the
28   First Circuit's negligence per se rule, but adopted the view of the Third and Fourth Circuits that OSHA
     regulations can be evidence of the applicable standard of care.  *Robertson*, 32 F.3d at 410.

1   any other statute or regulation and may be admitted to establish a standard or duty of care in all

2   negligence and wrongful death actions, including third party actions." *Elsner v. Uveges*, 102

3   P.3d 915, 921 (Cal. 2004).[4]  The Supreme Court of Nebraska noted that a "substantial majority of

4   other jurisdictions that have addressed the issue have concluded that OSHA regulations are

5   relevant and admissible in negligence actions involving an employer and a nonemployee."

6   *Orduna v. Total Constr. Servs., Inc.*, 713 N.W.2d 471, 478 (Neb. 2006).  *Orduna* ultimately held

7   that "in a negligence action brought by a nonemployee third party against a construction

8   company, a violation of an OSHA regulation, while not negligence as a matter of law, may

9   nonetheless be evidence of negligence to be considered with all the other evidence in the case."

10  *Id.* at 479; *see also Dominguez v. Excel Mfg. Co. Inc.*, No. 09-3611, 2010 WL 4698739, at *16

11  (N.D. Cal. Nov. 8, 2010) (denying summary judgment regarding admissibility of OSHA

12  regulations to support plaintiff's negligence claim when plaintiff was not an employee of

13  defendant); *Wendland v. AdobeAir, Inc.*, 221 P.3d 390, 396-97 (Ariz. Ct. App. 2009) (holding

14  that OSHA regulations were admissible for non-employee's action as evidence of negligence).

15        The Court finds that this is the correct approach.  If OSHA regulations are

16  considered—along with other evidence—as evidence of a standard of care, this does not itself

17  create a private cause of action, as has expressly been forbidden by the Nevada Supreme Court

18  and the Ninth Circuit.  *See Frith*, 552 P. at 340; *Crane*, 41 F.3d at 553.  Rather, allowing such

19  evidence to be considered merely supports a cause of action that already exists under the

20  common law of negligence.  Accordingly, while OSHA regulations cannot form the basis of

21  negligence per se or a direct cause of action by a non-employee, such regulations are admissible

22  as evidence of the applicable standard of care, to be considered along with other evidence of

23  negligence.  *See Robertson*, 32 F.3d at 410.

24

25        [4] The Supreme Court of California based its ruling largely on the fact that the California Labor
26  Code had recently been revised to state that its safety standards should apply "in the same manner as any
    other statute, ordinance, or regulation." *Elsner*, 102 P.3d at 920 (quoting Cal. Lab. Code § 6304.5).  The
27  court also highlighted that the revised section deleted the language expressly limiting its application to
    actions "between an employee and his own employer." *Id.*  NOSHA similarly does not include language
28  expressly limiting its application to actions between an employee and his employer. *See* Nev. Rev. Stat.
    § 618.

1    Granados argues that the OSHA regulations apply to "all places of employment, which

2    encompasses the location where Stout and Akola were hired to install the antenna.  Doc. #16 at

3    3-4; Nev. Rev. Stat. § 618.315.  Under NOSHA, "place of employment" means "any place,

4    whether indoors or out or elsewhere, and the premises appurtenant thereto, where, either

5    temporarily or permanently, any industry, trade, work or business is carried on, including all

6    construction work, and where any person is directly or indirectly employed by another for direct

7    or indirect gain or profit."  Nev. Rev. Stat. § 618.155.  The Court finds that while Granados was

8    not an employee of NNHS, the work conducted on Granados' billboard indicates that the

9    premises operated as a "place of employment" as defined by § 618.155.  *See Calabrese v. M.J.*

10   *Dean Constr.*, No. 59407, 2013 WL 7155084, at *2 (Nev. Dec. 18, 2013) (finding that a

11   walkway adjacent to a work site was a "place of employment" under NOSHA regulations)[5]; *Cain*

12   *v. Bovis Lend Lease, Inc.*, 817 F. Supp. 2d 1251, 1270-71 (D. Or. 2011) (finding that a temporary

13   roof worker was "an employee" and the roof was a "place of employment").  The Court therefore

14   denies NNHS's Motion for Partial Summary Judgment because genuine issues of material fact

15   exist as to whether NNHS was negligent, and a jury could consider the OSHA regulations as part

16   of its negligence analysis.

17          **B.      Motion to Exclude Evidence**

18          NNHS also moves the Court to exclude Granados' claims regarding special medical

19   damages because Granados did not timely disclose the damages to NNHS or establish that the

20   omission was "substantially justified" or "harmless."  *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); Fed. R.

21   Civ. P. 26(e)(1)(A)**;** Fed. R. Civ. P. 37(c)(1).  NNHS argues that the evidence must be excluded

22   because as a result of the late disclosure, "NNHS has been unable to evaluate its true potential

23   exposure and the need to retain expert witnesses regarding Plaintiff's Life Care Plan."  Doc. #24

24   at 6.  Granados argues that the delayed disclosure was harmless because it did not occur

25   immediately before trial or the close of discovery.  Doc. #28 at 3-4.  NNHS argues that the late

26   _____

27          [5] The Court acknowledges that an "unpublished opinion or order of the Nevada Supreme Court
     shall not be regarded as precedent and shall not be cited as legal authority."  Nev. Sup. Ct. R. 123.  The

28   Court does not rely on *Calabrese* as legal authority, but regards it as persuasive on the issue of whether
     the work site constituted a "place of employment."

7

1    disclosure was not harmless because the information revealed by the Life Care Plan adds

2    $419,656 to NNHS's potential exposure, and that waiting for expert input does not establish

3    substantial justification.  Doc. #24 at 5-6; Doc. #29 at 3-4.

4          Courts are most likely to exclude evidence when a party first discloses the material at

5    issue "shortly before trial or substantially after discovery has closed."  *Jackson*, 278 F.R.D. at

6    594.  "[T]he courts are likely to be lenient if the delay can be rectified by a limited extension of

7    the discovery timeline."  *Nassiri*, 2011 WL 2977127, at *6.  If a court determines that a delay

8    was not substantially justified or harmless, the court applies a five-factor test to determine

9    whether sanctions are appropriate, analyzing: "1) the public's interest in expeditious resolution of

10   litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4)

11   the public policy favoring disposition of cases on their merits; 5) the availability of less drastic

12   sanctions."  *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).

13          The Court need not apply the *Wendt* test because Granados' delayed disclosure was

14   harmless.  Granados served his supplemental disclosure and answers to interrogatories

15   addressing the Life Care Plan on August 25, 2014, two weeks before the original date to close

16   discovery, September 9, 2014.  Doc. #28 at 4.  The parties then jointly requested, and the Court

17   granted, discovery extensions for rebuttal of expert disclosures to be due September 8, 2014 and

18   all discovery due October 7, 2014.  Doc. #26.  Granados' late disclosure falls short of the type of

19   harm that typically causes courts to exclude evidence.  *See Yeti by Molly*, 259 F.3d at 1105

20   (excluding expert evidence submitted nearly two years after the close of discovery and twenty-

21   eight days before trial); *Nassiri*, 2010 WL 5248111 at *5 (noting that evidence is most often

22   excluded in "'extreme situations' in which the plaintiff did not provide a damages computation

23   until shortly before trial or until well after the close of discovery"); *CCR/AG Showcase Phase I*

24   *Owner, LLC v. United Artists Theatre Circuit, Inc.*, No. 2:08-cv-0984, 2010 WL 1947016, at *8

25   (D. Nev. May 13, 2010) (citing *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180

26   (9th Cir. 2008) ("[C]ourts are more likely to exclude damages evidence when a party first

27   discloses its computation of damages shortly before trial and substantially after discovery has

28   closed.").

8

1    Here, Granados disclosed the supplemental evidence of damages calculation one month

2    after his initial disclosure of experts and more than a month before the date the Court approved

3    for the close of discovery.  Doc. #28 at 4; Doc. #26.  The Court has not yet set a trial date.

4    Granados' late disclosure has not caused the type of harm contemplated by the Ninth Circuit's

5    orders that have excluded late-disclosed damages evidence because NNHS had an opportunity to

6    rebut the evidence of damages, and the evidence certainly was not disclosed immediately before

7    trial.  Accordingly, Granados has met his burden to show that the late disclosure was harmless.

8    NNHS argues further that Granados' late disclosure was not "substantially justified."

9    Doc. #29 at 3-4.  Granados did not address the question of whether the late disclosure was

10   "substantially justified" in his Response.  *See* Doc. #28.  This Court has held that "future expert

11   analysis does not relieve Plaintiffs of the obligation to provide information reasonably available"

12   when the plaintiff submitted his supplemental evidence five and six months after the initial

13   disclosure of damages evidence.  *Olaya v. Wal-Mart Stores, Inc.*, No. 2:11-cv-0997, 2012 WL

14   32622875, at *2-3 (D. Nev. Aug. 7, 2012).  The party facing sanctions for a late disclosure of

15   expert evidence bears the burden of showing that the late disclosure was substantially justified or

16   harmless.  *Yeti by Molly*, 259 F.3d at 1107.  Granados did not meet this burden because he did

17   not allege that the late disclosure was substantially justified.

18   Granados' failure to meet his burden to show that the late disclosure was substantially

19   justified does not require the exclusion of this evidence because Granados has shown that the late

20   disclosure was harmless, as discussed *supra*.  To survive sanctions, a plaintiff need only show

21   that the late disclosure was substantially justified *or* harmless.  *See* Fed. R. Civ. P. 37(c)(1).

22   "This is an either/or standard."  *R & O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 2:09-cv-1749,

23   2011 WL 2923703, at *3 (D. Nev. July 18, 2011).  Accordingly, the Court denies NNHS's

24   Motion to Exclude Evidence of Special Medical Damages because Granados has met his burden

25   to show that the late disclosure was harmless.

26   ///

27   ///

28   ///

1   **IV.     Conclusion**

2           IT IS THEREFORE ORDERED that NNHS's Motion for Partial Summary Judgment

3   (Doc. #13) is DENIED.

4           IT IS FURTHER ORDERED that NNHS's Motion to Exclude Evidence of Special

5   Damages under Rule 37(c)(1) (Doc. #24) is DENIED.

6           IT IS SO ORDERED.

7           DATED this 30th day of October, 2014.

8                                                   _____

9                                                   LARRY R. HICKS
                                                    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10